UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER BROWN,

        Plaintiff,

v.

FCA US LLC,

        Defendant.

_____/

No. 22-10626

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [16]**

This is an employment discrimination case in which Plaintiff Christopher Brown brings discrimination claims under the Americans with Disabilities Act ("ADA") and Age Discrimination in Employment Act ("ADEA") against his current employer, FCA US LLC ("Defendant").[1] The matter is before the Court on Defendant's motion for summary judgment. (ECF No. 16.) Plaintiff opposes the motion. (ECF No. 18.) Defendant has filed a reply. (ECF No. 19.) Pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), Defendant's motion will be decided on the briefs and without oral argument. For the reasons below, the Court DENIES Defendant's motion for summary judgment.

**I.**    **Background**

Plaintiff is 62 years old and has been employed with Defendant since 1995. He assumed his present position as a quality control engineer in 2002 and currently works at Defendant's Sterling Heights assembly plant. Plaintiff's claims here stem from a number

---

[1] Plaintiff initially brought state law claims along with his federal claims, but the Court declined to exercise supplemental jurisdiction over those claims and dismissed them without prejudice. (ECF No. 3.)

1

of disciplinary actions taken against him in 2021 and 2022. Plaintiff had been terminated by Defendant previously—on four different occasions—but each time, he was reinstated after his union got involved on his behalf. Those terminations took place in 2012, 2014, 2018, and 2019. While they are not at issue in this case, Plaintiff states that they provide "context." Defendant asserts that its willingness to reinstate Plaintiff multiple times in the past demonstrates, if anything, a lack of discriminatory animus.

In 2021, Plaintiff developed bone spurs in his left foot.[2] (ECF No. 16-2, PageID.143.) Those spurs affected the way he walked. As a result of the spurs and his sleep apnea, he requested a cart for transportation in the plant. (*Id.* at PageID.166-67.) Plaintiff testified that Jermaine Jackson, a shift manager, made comments regarding his age and the way he walked. More specifically, he testified that Jackson asked him, "Aren't you guys old enough? Shouldn't you guys go be doing something else." (*Id.* at PageID.157-58.) Jackson also told him he was old, walked "funny" (like Fred Sanford), and could not walk straight. (*Id.* at PageID.158.)

On March 3, 2021, Plaintiff received a written warning for "failure to exert normal effort on the job." (ECF No. 16-15.) According to Defendant, Plaintiff did not respond to a radio call from a supervisor until thirty-five minutes later, and when he did report, he "did not follow up on the issue, perform an investigation, or provide any feedback." Jackson then called him back and asked Plaintiff to provide him with "a clean point" but Jackson was not satisfied with the response. Jackson decided that Plaintiff's conduct warranted discipline, but the warning was ultimately issued by a supervisor, Eric Edwards. According

---

[2] Plaintiff eventually had the bone spurs removed, which resolved any issues he dealt with as a result.

to Plaintiff, he provided the clean point but "wasn't fast enough" for Jackson. (ECF No. 16-2, PageID.157.)

On April 6, 2021, Plaintiff received a one-day disciplinary layoff for "failure to exert normal effort on the job." (ECF No. 16-16.) According to Defendant, Plaintiff did not prepare detailed "night letters" describing issues and activities that took place during his shift. This discipline was issued by Manager Lynne Centofanto. Following that incident, Plaintiff went on medical leave from April 26, 2021, until June 6, 2021.[3] (ECF No. 16-2, PageID.159.)

After his return, on October 19, 2021, Plaintiff received a warning from Supervisor Orlando Maddox for calling in absent four minutes before a shift despite no longer having vacation or personal time. (ECF No. 19-4.) A few days later, on October 29, 2021, Maddox issued Plaintiff a one-day disciplinary lay-off for recoding that absence as a paid sick day in the computer. (ECF No. 19-5.) This was despite having called in a personal day and Maddox having coded the time as unpaid.

On February 11, 2022, Plaintiff was issued a five-day disciplinary layoff by Maddox for behaving in an "aggressive and inappropriate manner" towards Jackson. (ECF No. 19-6.) Another supervisor, Leroy White, had made a request for Plaintiff's assistance but Plaintiff stated he could not help because it was not a quality issue and asked him to call Jackson, who disagreed that it was not a quality issue. (ECF No. 16-2, PageID.163-64.) According to Plaintiff, he was talking loudly due to the noise of the machinery and it was Jackson who walked up to him in a threatening manner. (*See id.*)

---

[3] Plaintiff was on leave so that he could have bariatric surgery. That surgery resolved the symptoms he dealt with as a result of his sleep apnea.

On August 11, 2022, Plaintiff was issued a thirty-day disciplinary layoff by Maddox for another attendance issue. (ECF No. 19-7.) Plaintiff had received approval for leave on August 5, 11, and 12 but entered August 10 as a planned vacation day in the system. He was told to fix the error. He agreed to do so but did not and did not come to work that day. Plaintiff does not dispute these underlying facts but testified that he called Maddox and let him know that he would not be coming to work and was therefore under the assumption that he "was good." (ECF No. 16-2, PageID.165.)

Plaintiff believes that Defendant is "nit-picking" his performance in an attempt to justify terminating him again. He alleges both disability and age discrimination.

## II. Summary Judgment Standard

Summary judgment under Federal Rule of Civil Procedure 56(a) is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When reviewing the record, "'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'" *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). Furthermore, the "'substantive law will identify which facts are material,' and 'summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden "of establishing the 'absence of evidence to support the nonmoving party's case.'" *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once the moving party has

met its burden, the nonmoving party 'must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor.'" *Id.* at 839 (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992)).

## III. Analysis

### A. Relevant Framework

The ADA prohibits discrimination against a qualified individual "on the basis of disability."[4] 42 U.S.C. § 12112(a). The ADEA prohibits discrimination against an employee "because of" age. 29 U.S.C. § 623(a)(1). Discrimination claims are analyzed under different frameworks depending on whether the plaintiff relies on direct or indirect evidence.

When there is no direct evidence of discrimination, claims are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 319-20 (6th Cir. 2019) (ADA); *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 n.2 (6th Cir. 2010) (ADEA). The plaintiff must first establish a prima facie case of discrimination by showing that (1) he was a member of a protected class (for purposes of the ADA, he was disabled; for purposes of the ADEA, he was at least 40 years old), (2) he was subject to an adverse employment act, (3) he was qualified for the position, and (4) he was treated differently than a similarly situated employee outside his protected class (for purposes of the ADEA, someone "substantially younger" than him). *See*

---

[4] Disability discrimination includes a failure to make reasonable accommodations. *See* § 12112(b)(5)(A). Plaintiff alleges in his complaint that Defendant failed to make reasonable accommodations for his disabilities but does not address Defendant's arguments regarding this allegation in any way in his response. Thus, the Court deems any such claim abandoned.

5

*O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996); *Babb*, 942 F.3d at 320 (citation omitted). The burden of proof then shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. *McDonnell Douglas*, 411 U.S. at 802. Once the employer articulates such a reason, the burden of proof returns to the plaintiff to rebut the proffered reason by showing it was a pretext for discrimination. *Id.* at 804. A plaintiff may show pretext by demonstrating that the proffered reason (1) had no basis in fact, (2) did not actually motivate the adverse action, or (3) was insufficient to warrant the action. *See Babb*, 942 F.3d at 320. For claims under the ADEA, the burden of persuasion remains on the plaintiff to demonstrate that age was the "but for" cause of the employer's adverse action. *See Gross v. FBL Fin. Servs.*, 557 U.S. 167, 177 (2009).

Plaintiff states that Jackson's comments are direct evidence of discrimination. But "general, vague, or ambiguous comments" do not constitute direct evidence. *See Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 708 (6th Cir. 2008). Direct evidence "does not require the fact finder to draw any inferences to reach" the conclusion that unlawful discrimination was the real reason for the employer's actions. *Sharp v. Aker Plant Servs. Grp., Inc.*, 726 F.3d 789, 798 (6th Cir. 2013) (internal quotation marks and citation omitted). Here, Jackson was involved in only two of the five adverse acts,[5] and even for those two acts, the factfinder would need to draw inferences to tie any animus Jackson held to the ultimate disciplinary actions. Thus, Jackson's comments do not rise to the level of direct evidence of disability or age discrimination. Nonetheless, they are relevant to the issue of

---

[5] Plaintiff states that the following disciplinary actions were adverse acts and Defendant does not dispute this characterization: 1) the March 3, 2021 warning; 2) the April 6, 2021 one-day disciplinary lay-off; 3) the October 29, 2021 one-day disciplinary lay-off; 4) the February 11, 2022 five-day disciplinary lay-off, and 5) the August 11, 2022 thirty-day disciplinary lay-off.

pretext and will be discussed within the *McDonnell Douglas* burden-shifting analysis below. *See Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 393 (6th Cir. 2009) (noting that "discriminatory remarks, even by a nondecisionmaker, can serve as probative evidence of pretext").

### B. Disability Discrimination

The only element of Plaintiff's prima facie case of disability discrimination that appears to be in dispute is the first one—whether he was disabled. The term "disability" is defined in the ADA as: "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

Plaintiff argues that he may be found disabled under the first definition, known as "actual disability," because his bone spurs substantially limited his ability to walk. Walking is a major life activity under the ADA, *see* § 12102(2)(A), and Plaintiff testified that the bone spurs impacted his ability to walk and he needed a cart to move around the plant. Defendant notes that Plaintiff has had no issues related to the bone spurs since their removal. While "[i]mpairments that last only for a short period of time are typically not covered [by the first prong of the definition of disability], . . . they may be covered if sufficiently severe." *See* 29 C.F.R. Pt. 1630, App'x, § 1630.2(j)(1)(ix). Because the ADA as amended by Congress in 2008 is to "be construed broadly in favor of expansive coverage," *see Harrison v. Soave Enters. LLC*, 826 F. App'x 517, 523-25 (6th Cir. 2020), the Court finds a genuine question of fact as to whether Plaintiff suffered from an impairment that substantially limited his ability to walk.

7

Plaintiff also argues that he may be found disabled under the third definition. "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."[6] § 12102(3)(A). Here, Plaintiff had bone spurs and he testified that a manager, Jackson, made comments regarding how he walked. Thus, a reasonable jury could conclude that Plaintiff was regarded-as-disabled.

Because Plaintiff can establish a prima facie case of disability discrimination, the burden shifts to Defendant to articulate legitimate, non-discriminatory reasons for its actions. Defendant has done so for each of the adverse actions, but Plaintiff argues that the proffered reasons are pretextual. In response, Defendant invokes the honest belief rule. This rule states that "'when an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless.'" *Babb*, 942 F.3d at 322 (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009)). But Plaintiff argues that the reasons articulated by Defendant had no basis in fact and that they did not actually motivate or warrant the disciplinary actions. He also avers that they were based on highly subjective standards. "[A]lthough an employee's *bare*

---

[6] The Court notes that the parties provide the definition of "regarded as" disabled as set forth in *Sutton v. United Air Lines*, 527 U.S. 471 (1999), but that case is no longer good law. *See Babb*, 942 F.3d at 318 (noting that "in 2008, Congress amended the ADA to overturn *Sutton*, and to eliminate the requirement that a 'regarded as' plaintiff show that their employer 'mistakenly believed' that their impairment 'substantially limited one or more major life activities'").

*assertion* that the employer's proffered reason *has no basis in fact* is insufficient to call an employer's honest belief into question, and fails to create a genuine dispute of fact, an employee can still overcome the honest belief rule by pointing to evidence that the employer failed to make a *reasonably informed* and considered decision before taking its adverse employment action." *Id.* at 322-23 (internal quotation marks and citations omitted) (emphasis in original). Moreover, "subjective evaluations by the employer—at least where contested by the employee—require close examination because they have a greater susceptibility for being a smokescreen for pretext." *George v. Youngstown State Univ.*, 966 F.3d 446, 467 (6th Cir. 2020).

The first disciplinary action at issue was for "failure to exert normal effort." While the warning was issued by Edwards, Jackson is the one who determined that Plaintiff would be facing discipline. (*See* ECF No. 16-15, PageID.276.) Plaintiff testified that he complied with the request, but Jackson simply found him not fast enough. (ECF No. 16-2, PageID.156-57.) The fourth disciplinary action also stemmed from an incident with Jackson, who reported that Plaintiff behaved in an aggressive and inappropriate manner towards him. (*See* ECF No. 19-6, PageID.469.) Plaintiff disputes this characterization of the incident and testified that it was Jackson who walked up to him in a threatening manner. (ECF No. 16-2, 163-64.) In light of the subjective nature of the offenses and the remarks made by Jackson regarding the way Plaintiff walked, the Court finds a genuine issue of fact as to whether these disciplinary actions were based on Plaintiff's disability.

The remaining disciplinary actions were related to Plaintiff's preparation of his "night letters" and compliance with the attendance policy. Jackson does not appear to have been involved in issuing those disciplinary actions, but the record shows that

9

Defendant administered discipline progressively. (*See* ECF No. 16-14.) Thus, any animus held by Jackson tainted the entire decision-making process. The Court therefore finds that Defendant is not entitled to application of the honest belief rule and there is a genuine issue of fact as to pretext. Plaintiff's disability discrimination claim survives Defendant's motion for summary judgment.

### C. Age Discrimination

Defendant disputes the fourth prong of Plaintiff's prima facie case of age discrimination. Plaintiff points to another engineer by the name of Maureen Gibbons as a younger similarly situated employee who was treated more favorably than he was when she was involved in an incident with weld breaking but was not disciplined.

As a preliminary matter, the Court notes that the parties quibble over whether Gibbons is above or under 40 years old. But the relevant inquiry is whether she is "substantially younger" than Plaintiff. *See O'Connor*, 517 U.S. at 313. At 43 years old, (ECF No. 19-9), she is.

To be similarly situated, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (citations omitted). But "exact correlation" is not required for two employees to be similarly situated, only that the employees be similarly situated in all "'*relevant* aspects.'" *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)).

Defendant has presented an affidavit indicating that the incident was investigated but it was determined that disciplinary action was warranted for the weld auditor and welder but not Gibbons. (ECF No. 16-14, PageID.227.) Plaintiff testified, however, that the incident—during which Gibbons, as the engineer, was responsible for checking the work of the weld auditors—almost caused a major recall and that his infractions were minor in comparison. (ECF No. 16-2, PageID.162-63.) "Whether the comparison between similarly situated individuals is sufficiently relevant is itself a jury question." *See Bledsoe v. TVA Bd. of Directors*, 42 F.4th 568, 586 (6th Cir. 2022) (citing *Strickland v. City of Detroit*, 995 F.3d 495, 514 (6th Cir. 2021)); *see also Moore v. City of Clarksville*, No. 3:10-0141, 2011 U.S. Dist. LEXIS 78474, at *16 (M.D. Tenn. July 19, 2011) ("Exact comparators are often hard to come by, and whether any two employees are similarly situated often presents a question of fact for the jury."). Thus, Plaintiff can establish a prima facie case of age discrimination.

For the reasons discussed above, there is a genuine issue of fact as to whether Defendant's proffered reasons for the adverse acts were a pretext for age discrimination. Indeed, Plaintiff testified regarding remarks made by Jackson as to both his disability and age. Comparator evidence is also relevant to the question of pretext. *See Strickland*, 995 F.3d at 512 (noting that demonstrating pretext involves "raising the question of why the plaintiff was singled out for an adverse employment action") (internal quotation marks and citation omitted). Plaintiff's age discrimination claim survives Defendant's motion for summary judgment as well.

### IV.     Conclusion

For the reasons discussed above, Defendant's motion for summary judgment is DENIED.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: March 17, 2024

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 17, 2024, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager
